UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:06CV522-W

| | |
|---|---|
| METROPOLITAN PARTNERSHIP, LTD., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>DOROTHY W. HARRIS, )<br>)<br>Defendant. )<br>_____) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Defendant's "Motion to Dismiss" (document #9) and "Memorandum in Support . . ." (document #10), both filed February 16, 2007. On March 20, 2007, the Plaintiff filed its "Memorandum in Opposition . . ." (document #14), and its "Amended Complaint" (document #13). The Defendant then filed her "Motion to Dismiss Amended Complaint" and "Memorandum in Support . . ." (document ##15-16) April 6, 2007. On April 20, 2007, the Plaintiff filed its "Memorandum in Opposition . . ." (document #17). The Defendant filed her ". . . Reply . . ." (document #18) May 4, 2007.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Defendant's Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendant's Motions to Dismiss be <u>denied</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action seeking a declaratory judgment of the parties' rights and obligations

pursuant to a "Preliminary Operating Agreement," monetary damages as a result of an alleged breach of the "Preliminary Operating Agreement," or, in the alternative, recovery in quantum meruit.

Accepting the allegations of the Amended Complaint as true, the Plaintiff, a District of Columbia corporation with its principal place of business in Reston, Virginia, specializes in all phases and types of real estate development and construction. The Defendant, a resident of Mecklenburg County, North Carolina, owns a 21.484 acre parcel of real property at the intersection of Glen Eagles Road and Park Road in Charlotte, North Carolina (the "property").

In January of 2003, the parties entered into a joint venture, pursuant to a written agreement, to operate as Harris Metropolitan, LLC and with the express purpose of creating a mixed-use development on the property. Harris Metropolitan filed its Articles of Organization with the North Carolina Secretary of State and, after completing some pre-development work pursuant to its first operating agreement, entered into a lease with Saks Fifth Avenue, with a view toward Saks becoming the development's "anchor." Saks subsequently terminated the lease, however, allegedly due to the Defendant's failure to satisfy certain of the lease's preconditions. After Saks terminated its lease, Harris Metropolitan was dissolved pursuant to an August 2004 termination letter between the parties, which also required a final payment to the Plaintiff for work performed under the first operating agreement.

The Plaintiff subsequently engaged in discussions with The Ritz-Carlton Hotel Company, which agreed to develop a combination hotel and condominium project on a portion of the property. On August 5, 2005, following the Plaintiff's procurement of Ritz-Carlton's participation, the parties entered into the "Preliminary Operating Agreement of Proposed Harris Metropolitan, LLC" (the

2

"Agreement"),[1] which is the document at issue in this action. Substantially similar to the parties' first operating agreement, the Agreement includes, among others, the following terms:

\* \* \*

> Harris and Metropolitan desire to enter into an Agreement for the purpose of forming a limited liability company ("Harris Metropolitan, LLC"), herein referred to as the "Company," to serve as the development entity and to set forth certain basic terms for their arrangement, with the understanding that the parties will negotiate in good faith a definitive operating agreement in the general manner described below.
>
> NOW, THEREFORE, in consideration of the mutual promises made herein, the parties agree as follow:
>
> 1. Harris and Metropolitan will prepare and present the required committee presentation and secure project approval of the Ritz-Carlton Development Committee. Metropolitan will also provide the construction management services for the Residences as well as all other phases of the Master Development, and both parties agree to work in good faith to commence the construction documents within six months of this agreement.
>
> \* \* \*
>
> 4. Harris and Metropolitan will own 80% and 20% of the Company respectively. No distributions will be made until all debt has been paid (except for possible income tax distributions). Except as otherwise provided below, neither Harris nor Metropolitan shall have any obligation to provide for additional capital contributions to the Company until such time that the Definitive Operating Agreement (as defined below) is executed by the parties hereto.
>
> Not withstanding the above in the event financing so dictates, the above percentages may require to be changed, upon agreement of Harris and Metropolitan.
>
> 5. All power and authority of the Company shall be exercised by, or under the direction and control of Harris, as the Manager, in a manner consistent with this Agreement, and the Manager is vested with the exclusive control of the management of the business and affairs of the Company; provided, however that both parties agree to communicate in good faith with respect to all development activities and decisions made prior to the execution of the Definitive Operating Agreement and to comply with all contractual obligations set forth in the agreements to be entered into by the

---

[1] The Plaintiff attached and incorporated the Agreement to the Amended Complaint.

Company with the Ritz-Carlton Hotel Company. Metropolitan, and Harris, on an ongoing basis in good faith will provide each other with copies of all documents, presentations and other information related to the project.

6. In consideration of the agreement of Metropolitan to enter into this Agreement, Harris agrees to make payments to Metropolitan in the amount of $45,000.00 per month beginning on August 1, 2005 subject to the delivery of the Power Point presentation on August 5, and concurrent with the execution of this Agreement by both parties. Metropolitan will refund the above payment if Ritz-Carlton written approval of the project is not received by September 1, 2005. Such payments will continue for six months at which point Metropolitan payments will cease unless the following have been obtained:

> (1) Sufficient pre sales have been made to secure financing.
> (2) All "RM" Agreements outlined in the Letter of Intent have been completed and executed.

After the first six months any such continuing payments will be at $25,000.00 per month until such payments aggregate $1,000,000.00 . . .

* * *

7. As a condition precedent to this working arrangement, the following material inducements apply: Harris will use its best efforts to cause Price Waterhouse Coopers ("PWC") to perform their responsibilities in a timely manner in accordance with the Ritz-Carlton schedule. Harris and Metropolitan agree to expeditiously seek financing to fund the work which is reasonably required of it by Ritz-Carlton and the project schedule, and Metropolitan will be fully integrated in all respects in the work process and all required project negotiations. Harris and Metropolitan will work together in cooperation and good faith with each other in negotiating the completion of the Ritz-Carlton documents. Harris agrees to fund the work which is reasonably required of it by Ritz-Carlton.

8. Harris and Metropolitan have not reached agreement on the specific terms and provisions that would normally be contained in an operating agreement for a complex real estate development venture of this kind. Accordingly, Harris and Metropolitan agree to exercise diligent good faith efforts to enter into a more definitive operating agreement (the "Definitive Operating Agreement") setting forth the agreement of Harris and Metropolitan with respect to such terms and provisions customarily contained in an operating agreement for a development venture of this kind within thirty days prior to completion of the RM Agreements. Metro/Harris will have the option to terminate and not execute these [sic] Definitive Agreement if the market does not support the Residence sales.

* * *

The parties entered into the Preliminary Operating Agreement with the understanding that they would negotiate a more definitive contract, in good faith, after Harris Metropolitan completed its negotiations with Ritz-Carlton. The final document was expected to incorporate some of the development details agreed upon with Ritz-Carlton, but not to alter the basic terms of the parties' obligations in the Agreement. In any event, the Plaintiff allegedly completed the negotiations with Ritz-Carlton assuming that the Defendant would fulfill her obligations under the Agreement.

As it was bound to do under the Agreement, the Plaintiff prepared and provided Ritz-Carlton with presentation materials to secure its Development Committee's approval of the proposed project. The Plaintiff also provided the Defendant with the necessary materials to market, budget and schedule the project (as it was required to provide under the Agreement). As desired by the parties and also pursuant to the Agreement, the Plaintiff received approval from Ritz-Carlton's Development Committee and negotiated a satisfactory agreement between Ritz-Carlton and the Defendant. As a result, the Defendant made two payments – as required by the Agreement – to the Plaintiff.

Subsequent to finalizing the Ritz-Carlton deal, the parties attempted, but were not able, to agree on terms for the final operating agreement. When negotiations reached an impasse, the Defendant declared that the Preliminary Operating Agreement was not a binding contract.

The Plaintiff filed its Complaint in this Court on December 20, 2006, and its Amended Complaint on March 20, 2007. On February 16, 2007 and April 6, 2007, the Defendant filed the subject Motions which have been fully briefed and are, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996) (en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

B. **Motion to Dismiss Original Complaint**

On March 20, 2007, the Plaintiff filed its Response to the Defendant's Motion to Dismiss as well as an Amended Complaint. Following these filings, the Defendant filed a Motion to Dismiss the Amended Complaint. The second Motion to Dismiss, addressed below, encompasses the same issues as the original Motion to Dismiss. Thus, the undersigned will respectfully recommend that the Defendant's Motion to Dismiss (document #9) filed February 16, 2007, be denied as moot.

C. **Motion to Dismiss Amended Complaint**

1. **Declaratory Judgment and Breach of Express Contract Claims**

The Defendant argues that both the declaratory judgment and express contract claims must fail because the Agreement at issue is merely an "agreement to agree." In support of this argument the Defendant points to the provisions in the Agreement which reference a future "Definitive Operating Agreement." In contrast, the Plaintiff points to specific provisions in the Agreement which create present obligations which do not depend upon the execution of the Definitive Operating Agreement, and to the parties' conduct after the execution of the Agreement. The Plaintiff also argues that the terms still to be decided by a Definitive Operating Agreement were immaterial, at least to the contract as recorded in the Preliminary Operating Agreement pursuant to which both parties acted and upon which both parties relied.

It is well settled in North Carolina that "courts generally hold a contract, or offer to contract, leaving material portions open for future agreement [to be] nugatory and void for indefiniteness." Boyce v. McMahan, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (finding agreement to agree void where parties' writing provided for a "desire to enter into a preliminary agreement setting out

7

the main features as to the desires of both parties and to execute a more detailed agreement at a later date"). To be binding, "a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations." Id.

The dispositive issue in determining whether a writing is a binding contract or merely an agreement to agree is whether the agreement specifies only the "intentions and desires" of the parties or if it evinces an actual agreement. Housing, Inc. v. Weaver, 305 N.C. 428, 444, 290 S.E.2d 642, 652 (1982). Courts may look to whether the agreement actually manifested an intent not to become bound until a later execution of a more formal agreement, and

> [i]n the usual case, the question whether an agreement is complete or partial is left to inference or further proof. The subsequent conduct and interpretation of the parties themselves may be decisive of the question as to whether a contract has been made even though a document was contemplated and has never been executed.

County of Jackson v. Nichols, 175 N.C. App. 196, 199, 623 S.E.2d 277, 279-80 (2005) (internal citations and quotations omitted).

In fact, in the year following the Boyce decision, the North Carolina Court of Appeals found a binding contract even where a letter's terms stated that it was to "serve as a memorandum agreement until proper complete documents can be drawn up to consummate this transaction." North Carolina Nat'l Bank v. Wallens, 26 N.C. App. 580, 582-84, 217 S.E.2d 12, 14-15 (1975) (noting that the "subsequent conduct and interpretation of the parties themselves may be decisive of the question"). In reaching this conclusion the Court of Appeals stated:

> From such language it cannot be said that execution of a later agreement was a condition precedent to any contractual rights which might otherwise pertain. Furthermore, reference to a more 'complete' document does not necessarily indicate that material portions of the agreement have been left open for future negotiation. It could mean only that immaterial matters, which are of no consequence, will be added to complete the agreement.

Id.

In the light most favorable to the Plaintiff, there are no facts currently in the record which would show that the terms left to be agreed upon were material, at least in regard to the Preliminary Operating Agreement and perhaps in regard to the Plaintiff's reasonable expectation of future profits. Further, the Preliminary Operating Agreement itself states that the parties "desire to enter into an Agreement . . . to set forth certain basic terms for their arrangement," and proceeds to state percentages of ownership between the parties, terms of payment, and "material inducements" to the "working arrangement." While the Agreement also states that the parties "have not reached agreement on the specific terms and provisions that would normally be contained in an operating agreement for a complex real estate development venture," the only term that relies on a Definitive Operating Agreement is the obligation to provide additional capital contributions. Based on these facts, it cannot be said – in the light most favorable to the Plaintiff – that it has failed to state a claim for which relief may be granted.

In addition, aside from the terms of the incorporated Agreement itself, the conduct alleged in the Amended Complaint tends to show that the parties considered themselves bound by the Agreement. For example, the Plaintiff completed the negotiations with Ritz-Carlton, prepared and provided presentation materials to Ritz-Carlton, and prepared and provided materials regarding the Residential Project to the Defendant. In addition, the Defendant did make two payments to the Plaintiff pursuant to the Agreement. This and related conduct of the parties tends to show that they perceived the Agreement as binding. See Walker v. Goodson Farms, Inc., 90 N.C. App. 478, 486-87, 369 S.E.2d 122, 126-27 (1988) (proper to examine parties' conduct to determine terms of contract where no final written agreement was drafted); Zinn v. Walker, 87 N.C. App. 325, 332, 361

S.E.2d 314, 318 (1987) (noting that parties' intentions "may be construed from the terms of the writings and the parties' conduct").

In short, there simply is not enough evidence before the Court at this time to conclude that the Preliminary Operating Agreement was merely an agreement to agree. To the contrary, on the facts alleged in the Amended Complaint, it appears that there may have been only immaterial terms left to be decided by the Definitive Operating Agreement – and that the parties conducted themselves accordingly. Thus, the undersigned will respectfully recommend that the Defendant's Motion to Dismiss the Plaintiff's declaratory judgment and breach of express contract claims be <u>denied</u>.

## **2. <u>Implied Contract / Quantum Meruit Claim</u>**

The Defendant argues that North Carolina law does not allow recovery in quantum meruit where an express contract exists. However, the two cases cited by the Defendant for this proposition deal with the situation where there is an express contract between two parties and one of those parties then attempts to recover from a third party in quantum meruit. See <u>Vetco Concrete Co. v. Troy Lumber Co.</u>, 256 N.C. 709, 715, 124 S.E.2d 905, 909 (1962) (third party not liable where express contract existed for subject materials between two other parties); <u>G&S Business Services, Inc. v. Fast Fare, Inc.</u>, 94 N.C. App. 483, 488, 380 S.E.2d 792, 795 (1989) ("where there is a contract between two parties to furnish goods and services for the benefit of a third, the third party is not liable on an implied contract or under quantum meruit for those goods and services").

Although it is "a well established principle that an express contract precludes an implied contract with reference to the same matter," <u>Vetco</u>, 256 N.C. at 713, 124 S.E.2d at 908, the Defendant has clearly contended that there is no express contract. If the Plaintiff fails to establish an express contract, "such failure would not defeat [its] right to recover the fair value of services

10

rendered under an implied promise to pay." Cline v. Cline, 258 N.C. 295, 298, 128 S.E.2d 401, 403 (1962). See also Environmental Landscape Design Specialist v. Shields, 75 N.C. App. 304, 305, 330 S.E.2d 627, 628 (1985) ("Although the better practice would have been for plaintiff to plead both express and implied contract, plaintiff could still recover in quantum meruit in the absence of proof of an express contract, if a contract could be implied from the evidence."). Thus, it is clear that the Plaintiff has also properly pled its alternative implied contract/quantum meruit claim.

"To recover in quantum meruit, plaintiff must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." Environmental Landscape, 75 N.C. App. at 305, 330 S.E.2d at 628. Because the Plaintiff has pled these elements, it would also be improper at this stage in the proceedings to dismiss this claim. Of course, if an express contract is found to exist later in the proceedings, the Plaintiff could not also recover in quantum meruit. See Catoe v. Helms Construction & Concrete Co., 91 N.C. App. 492, 498, 372 S.E.2d 331, 335 (1988) (although "liberal pleading rules permit pleading in the alternative . . . it is error to submit an alternative implied contract claim to the jury when an express contract has been proved") (internal citations omitted).

Accordingly, the undersigned also will respectfully recommend that the Defendant's Motion to Dismiss the Plaintiff's quantum meruit claim be denied.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendant's "Motion to Dismiss" (document #9) be **DENIED** as moot, and that the Defendant's "Motion to Dismiss Amended Complaint" (document #15) be **DENIED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED.**

Signed: May 4, 2007

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge